## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

BOBBY T. SHEPPARD,

          Petitioner,

        -vs-

NORMAN ROBINSON, Warden,
 Chillicothe Correctional Institution,

          Respondent.

:

:

:

:

Case No. 1:12-cv-198

District Judge Gregory L. Frost
Magistrate Judge Michael R. Merz

## DECISION AND ORDER DENYING RENEWED MOTION TO
## AMEND AND TRANSFERRING CASE TO THE SIXTH CIRCUIT

This capital habeas corpus case is before the Court on Petitioner's second Motion for Leave to File a Second Amended Petition (ECF No. 70). The Warden opposes the Motion (ECF No. 72) and Sheppard has file a Reply in support (ECF No. 74).

Motions to amend under Fed. R. Civ. P. 15 are non-dispositive under 28 U.S.C. § 636(b)(1)(A) and thus come within the decisional authority of Magistrate Judges in the first instance, in referred cases.

On September 16, 2015, the Magistrate Judge denied Sheppard's first Motion for Leave to File a Second Amended and Supplemental Petition with leave to re-file. "If he does so," the Order provides, "he must state plainly how the claims he wishes to plead here differ from the

- 1 -

claims he has pled in *In re Ohio Lethal Injection Protocol Litig.*, Case No. 2:11-cv-1016." (ECF No. 67, PageID 1020).[1] The instant motion responds to that Order.

**Procedural History**

On August 19, 1994, Bobby Sheppard murdered the owner of a Cincinnati liquor store by firing a single shot into the back of his head. A jury convicted him of aggravated murder and aggravated robbery for this conduct and he was sentenced to death. *Sheppard v. Bagley*, 657 F.3d 338, 341 (6th Cir. 2011), *cert. denied,* ___ U.S. ___, 132 S.Ct. 2751 (2011). After exhausting his Ohio state court remedies, he filed a petition for writ of habeas corpus in this Court June 20, 2000 (Case No. 1:00-cv-493). The petition's dismissal with prejudice was affirmed by the Sixth Circuit. *Id.* Two motions for relief from judgment have also been denied in the original case.

This second-in-time habeas application was filed March 8, 2012 (ECF No. 2). In April 2012 the undersigned transferred the case to the Sixth Circuit for a determination of whether it was a second-or-successive application (ECF No. 12). Without questioning the authority of a Magistrate Judge to enter a transfer order, the Sixth Circuit remanded for this Court to make the second-or-successive determination. *In re: Sheppard*, 2012 U.S. App. LEXIS 13709 (6th Cir. May 25, 2012).

On remand, the Magistrate Judge recommended deciding that the Petition was not second-or-successive because it was based on Ohio's adoption of a new lethal injection protocol

---

[1] Sheppard infers from the fact that the denial was without prejudice that the Magistrate Judge concluded the amendment would not have been futile. (Reply, ECF No. 74, PageID 1161.) The inference is unwarranted.

on September 18, 2011, and "[t]hat set of facts fits squarely within the Sixth Circuit precedent cited above[2] applying *Panetti* and *Martinez-Villareal* to varieties of later-arising or later-ripening claims other than competency to be executed." (Report and Recommendations, ECF No. 19, PageID 237.) District Judge Frost adopted that Report. (Order, ECF No. 35.) He then dismissed the Petition and Sheppard appealed, but the Sixth Circuit remanded on Sheppard's motion and without explanation. *Sheppard v. Robinson,* No. 13-3900 (6th Cir. Dec. 17, 2013)(unreported, copy at ECF No. 41).

After remand, Sheppard's time to move to amend was extended several times on consent of the Warden. Ultimately, Sheppard moved to amend, resulting in the denial without prejudice of September 16, 2015.

**Sheppard's Motion to Amend**

Sheppard now seeks to plead the following claims:

> **FIRST GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Sheppard because the only manner available under the law to execute him violates his Eighth Amendment rights.
>
> I. Any drug DRC can procure to use to execute Sheppard via lethal injection has a substantial, objectively intolerable risk of causing unnecessary, severe pain, suffering, degradation, humiliation, and/or disgrace in violation of the Eighth Amendment, and Ohio has no

---

[2] Referring to *In re Salem*, 631 F.3d 809 (6th Cir. 2011); *Roberts v. Gansheimer*, No. 10-2619, 2011 U.S. Dist. LEXIS 154459 (N.D. Ohio Dec. 21, 2011) (Report and Recommendation of Vecchiarelli, J.J., adopted by Oliver, D.J., at 2012 U.S. Dist. LEXIS 43348 (N.D. Ohio Mar. 29, 2012; *In re Bowen*, 436 F.3d 699 (6th Cir. 2006); and *In re Marsch*, 209 Fed. App'x 481 (6th Cir. 2006).

other manner of execution available to execute Sheppard that complies with the Constitution.

II. Any drug DRC can procure to use to execute Sheppard via lethal injection poses an objectively intolerable risk of causing a lingering and/or undignified death in violation of the Eighth Amendment, and Ohio has no other manner of execution available to execute Sheppard that complies with the Constitution.

III. The lack of legally available, effective drugs to conduct lethal-injection executions will result in the arbitrary and capricious imposition of the death penalty on Sheppard in violation of the Eighth Amendment, and Ohio has no other manner of execution available to execute Sheppard that complies with the Constitution.

IV. The lack of legally obtainable, effective drugs to conduct Sheppard's lethal-injection execution, and the reality that Ohio has no other manner of execution available to execute Sheppard that complies with the Constitution, will cause Sheppard psychological torture, pain and suffering in violation of the Eighth Amendment.

V. The unavoidable variations inherent in Ohio's lethal-injection system and DRC's continued and consistent inability to properly administer its execution protocols present a substantial, objectively intolerable risk of serious harm to Sheppard in violation of the Eighth Amendment, and Ohio has no other manner of execution available to execute Sheppard that complies with the Constitution.

VI. Sheppard's unique, individual physical and/or mental characteristics will cause any execution by lethal injection under Ohio law to violate the Eighth Amendment, and Ohio has no other manner of execution available to execute Sheppard that complies with the Constitution.

- 4 -

**SECOND GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Sheppard because the only manner available for execution violates the Due Process Clause or Privileges or Immunities Clause of the Fourteenth Amendment.

I. Execution by lethal injection under Ohio law will deny Sheppard's interests in expecting and receiving a quick and painless death in violation of the Due Process Clause of the Fourteenth Amendment, and Ohio has no other manner of execution available to execute Sheppard that complies with the Constitution.

II. Sheppard's execution by lethal-injection under Ohio law will be a human experiment on a non-consenting prisoner in violation of the Due Process and Privileges or Immunities Clauses of the Fourteenth Amendment, and Ohio has no other manner of execution available to execute Sheppard that complies with the Constitution.

**THIRD GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Sheppard because the only manner of execution available for execution violates the Equal Protection Clause of the Fourteenth Amendment.

**I. Equal Protection – Fundamental Rights**

A. Underlying constitutional violations in Ohio's lethal-injection system substantially burden Sheppard's fundamental rights, and Ohio has no other manner of execution available to execute Sheppard that complies with the Constitution.

B. Unavoidable variation inherent in Ohio's lethal-injection system substantially burdens Sheppard's fundamental rights, and Ohio has no other manner of execution available to execute Sheppard that complies with the Constitution.

**II. Equal Protection – "Class-of-One" Disparate Treatment**

**FOURTH GROUND FOR RELIEF:** The State of Ohio cannot constitutionally execute Sheppard because the only manner of execution available for execution depends on state execution laws that are preempted by federal law.

I. DRC's actions in obtaining execution drugs, its import, purchase, possession, dispensing, distribution and/or administration (and any other terms of art under the CSA) of those drugs violate the CSA.

A. The Ohio lethal-injection statute and DRC's execution protocols, as written and as implemented, purport to permit DRC to obtain controlled substances used in executions without a valid prescription, in violation of the CSA and DEA regulations.

B. The Ohio lethal-injection statute and DRC's execution protocols, as written and as implemented, purport to authorize DRC, Central Pharmacy, and Southern Ohio Correctional Facility to provide controlled substances to Drug Administrators in contravention of the CSA and DEA regulations.

C. DRC's execution protocols and the Ohio execution statute are preempted by the federal CSA.

II. DRC's actions in obtaining execution drugs, its import, purchase, possession, dispensing, distribution and/or administration (and any other terms of art under the FDCA) of those drugs contravene the FDCA because those drugs used in an execution are unapproved drugs and/or misbranded drugs and/or constitute unapproved Investigational New Drugs.

- 6 -

A. Thiopental sodium can never be used as an execution drug in compliance with the FDCA.

B. Drugs that are considered Schedule I drugs can never be used as execution drugs in compliance with FDCA and/or the CSA.

C. No drug can ever be used to carry out a lethal-injection human execution because no drug has ever been approved by FDA for the specific purpose of causing death from lethal injection during a human execution or for the purpose of causing a quick and painless death in a human execution.

D. DRC's use of unapproved new drugs in a lethal-injection execution contravenes federal law because it is not subject to an Investigational New Drug Application.

E. DRC's execution protocols and the Ohio execution statute are preempted by the federal FDCA.

III. DRC's actions in obtaining compounded controlled substances for use as execution drugs, its import, purchase, possession, dispensing, distribution and/or administrations (and any other terms of art under the CSA or FDCA) of those drugs violate federal law.

A. DRC's actions in obtaining compounded execution drugs, its procurement, obtaining, importing, purchasing, dispensing, distributing, possessing and/or administration (and any other terms of art under the CSA or FDCA) of those drugs violates federal law because compounding drugs for use in an execution violates 21 U.S.C. § 353a and/or § 353b.

- 7 -

> B. DRC's actions in obtaining compounded execution drugs, its procuring, obtaining, importing, purchasing, dispensing, distributing, possessing and/or administering (and any other terms of art under the CSA or FDCA) of compounded controlled substances violate various other provisions of the federal drug laws.
>
> C. DRC's execution protocols and the Ohio execution statute are preempted by federal law.

(ECF No. 70-1.)

**Differences from the pending § 1983 action**

Sheppard is a plaintiff in *In re Ohio Lethal Injection Protocol Litig.,* Case No. 2:11-cv-1016 (GLF/MRM), an action under 42 U.S.C. § 1983 and other federal statutes seeking to enjoin his execution by lethal injection under Ohio law.  In the September 16 Order, the Magistrate Judge ordered him to differentiate his proposed newclaims in this case from those made in the § 1983 case.

One critical distinction, Sheppard says, is that his proposed amended petition does not concede an alternative constitutional method of execution as required by *Glossip v. Gross,* 576 U.S. ___,  135 S. Ct. 2726, 192 L. Ed. 2d 761 (2015), for § 1983 method-of-execution claims (Motion, ECF No. 70, PageID 1039).   He asserts a second critical distinction is in the relief available:  a declaration that the death sentence is invalid in habeas as opposed to something else – unidentified – in § 1983 proceedings. *Id.*  at 1039.  The most important distinction, Sheppard

claims, "is that a grant of relief under § 1983 would not necessarily preclude Sheppard's execution," whereas a victory in habeas would. *Id.* at PageID 1040-43.

Sheppard emphasizes the difference between obtaining injunctive relief against "applying the current execution protocol to Sheppard" and "injunctive relief in habeas [that] would . . . preclude the state from using other drugs and from obtaining any execution drugs by unlawful means . . ." *Id.* at PageID 1044. Likewise, he says, injunctive relief against using the **current** drugs because doing so would constitute "unlawful experimentation on him as a non-consenting, unwilling participant in a human experimentation," is distinct from "injunctive relief" on the same claim in habeas which "would also bar the State from attempting any lethal-injection execution of him that would constitute" such an experiment. *Id.*

**Why the Petition is not second-or-successive**

As noted above, this is Sheppard's second-in-time habeas petition directed to the same state court judgment. If this Court finds it to be a second-or-successive petition, it will lack jurisdiction to consider the merits and must transfer the case to the Sixth Circuit. *Moreland v. Robinson*, ___ F.3d ___, 2016 U.S. App. LEXIS 2339 (6th Cir. 2016), citing *In re Sims*, 111 F.3d 45 (6th Cir. 1997).

Sheppard argues two lines of analysis, depending on whether Sheppard's lethal-injection validity claims are already ripe or will not become ripe until sometime in the future.

**Already Ripe**

Sheppard asserts that under the law of the case doctrine as it applies here, the Court has already held the original Petition in this case is not second-or-successive (Motion, ECF No. 70, PageID 1046, citing *Sheppard v. Robinson,* 2013 U.S. Dist. LEXIS 5565 (S.D. Ohio 2013)(Frost, J.)  Sheppard avers that his challenges to his death sentence in the Proposed Second Amended and Supplemental Petition are not *per se* challenges to lethal injection execution.  Rather, he says, he claims "Ohio cannot constitutionally carry out a lethal injection execution on Sheppard due to his unique, individual characteristics **and** Ohio's inability to adopt or implement any constitutionally sufficient execution protocol." *Id.*  at PageID 1049 (emphasis added).  Sheppard asserts it would be "unjust in the extreme and unfairly allow Sheppard's lethal-injection invalidity claims to escape review entirely" if the Court changed positions and now found his Petition to be second-or-successive. *Id.*  at PageID 1050.

**Not Yet Ripe**

Alternatively, Sheppard asserts his claims are not yet ripe because his execution is not imminent and "his health conditions and Ohio's execution protocol remain subject to variance over time." *Id.*  at PageID 1051.

**The Warden's Opposition**

In opposing the Motion to Amend, the Warden stands on prior argument made in this and other capital habeas corpus cases about the requirement to bring method-of-execution claims in a § 1983 action (Opposition, ECF No. 72).  The Warden emphasizes "[n]othing in his Proposed Second Amended Petition is an attack upon Sheppard's guilt at trial or the imposition of a sentence.  All of his claims are directed at how that sentence will be carried out." *Id.* at PageID 1149.  Reminding the Court of the requirement in *Glossip* to plead an alternative method of execution, the Warden argues that the mere omission of an alternative does not convert a method-of-execution claim into a proper habeas claim. *Id.* at PageID1150.

**Sheppard's Reply**

Sheppard argues first that this Court has already implicitly "rejected the Warden's overbroad reading of *Glossip*. . . ." (Reply, ECF No. 74, PageID 1159, 1161-62.)  He then claims the Warden's position would preclude habeas actions which are intensely fact dependent, including *Brady* or *Ford* claims. *Id.* at PageID 1162-65.

Sheppard then criticizes the Warden's citation of *Malloy v. South Carolina*, 237 U.S. 180 (1915), in which the Supreme Court held that a post-conviction legislative change from hanging to electrocution as a method of execution did not violate the Ex Post Facto Clause. *Id.* at PageID 1166-71.

Sheppard asserts *Glossip* is limited to Eighth Amendment issues, whereas his Proposed Second Amended Petition purports to raise claims under the Due Process, Privileges or Immunities, and Equal Protection Clauses. *Id.* at PageID 1172.  He asserts that § 1983

challenges and habeas challenges "can be legally distinct – and properly characterized – based **solely** on the remedy sought, even if there is a significant overlap in the factual allegations or the constitutional theories to demonstrate a violation of a particular constitutional amendment or federal law or treaty." *Id.* at PageID 1176 (emphasis added).

Sheppard also distinguishes § 1983 and habeas challenges in terms of the relevant evidence. He notes Judge Frost has held evidence "related to matters under *previous* execution protocols is not relevant to demonstrate constitutional violations under a *current* protocol." *Id.,* citing *In re Ohio Execution Protocol Litig. (Wiles),* 868 F. Supp. 2d 625 (S.D. Ohio 2012). In habeas, Sheppard argues, that relevancy conclusion is "inverted," because

> Sheppard asserts that Ohio can never adhere to the law in its efforts to execute him via lethal-injection, regardless of protocol, and thus historical evidence of protocol deviations under previous protocols or other violations of law in the course of carrying out an execution is just as important as evidence of deviations from the current protocol or violations of the current law.

*Id.* at PageID 1177. In fact, it is not just past Ohio experience that is relevant. Sheppard asserts:

> In habeas, the relevant evidence encompasses *all* available evidence of how state officials – in Ohio and other states[3] – have carried out past execution protocols under the law and what happened, as well as any available evidence of how state officials will administer a lethal-injection protocol between now and any attempt to execute Raglin[4] [sic].

---

[3] One wonders why federal lethal-injection executions, e.g., of Timothy McVeigh, are not relevant. Or perhaps "botched" prior executions by other methods. See *Louisiana, ex rel. Francis, v. Resweber*, 329 U.S. 459 (1947).
[4] Thus in the original. Presumably "Sheppard" was intended. Sheppard shares counsel with another death row inmate, Walter Raglin.

*Id.* at PageID 1178.   Sheppard summarizes his position as being "Sheppard's state-court sentencing judgment is invalid for impossibility." *Id.* at PageID 1181.

Sheppard argues that wrongly decided but binding Sixth Circuit precedent requires him to proceed simultaneously in habeas and § 1983.  *Id.* at 1185-88, citing *Cooey v. Strickland,* 479 F.3d 412 (6th Cir.  2007)(purportedly holding the § 1983 statute of limitations begins to run when a conviction becomes final on direct appeal or when Ohio adopts a new lethal injection protocol).

Despite claiming the Warden has not opposed his not-second-or-successive arguments, Sheppard finds it necessary to write five pages on this subject. *Id.* at PageID 1188-93.  He claims "new factual predicates" have arisen since Sheppard filed his first Petition on June 20, 2000, like the factual predicates found sufficient to avoid second-or-successive characterization in *Panetti* and *Martinez-Villareal*, *supra*.  He hypothesizes a situation in which the needles necessary for lethal injection become unobtainable by lawful means anywhere in the world. *Id.* at PageID 1189.  As in the hypothetical, Sheppard points to facts which have arisen since his first habeas case which allegedly warrant habeas relief, including (1) Ohio's change of drugs, (2) executions in Ohio and elsewhere showing "Ohio cannot consistently carry out a lethal-injection execution in strict accordance with the execution protocols and other sources of law," (3) Sheppard's individual characteristics, (4) Ohio's inability to legally obtain execution drugs, (4) new advances in medical research, and (5) evidence from previous executions. *Id.* at PageID 1190-93.

Sheppard rejects the Warden's reliance on *Magwood v. Patterson*, 561 U.S. 320 (2010), and *King v. Morgan,* 807 F.3d 154 (6th Cir. 2015), which held that when a state court defendant

- 13 -

becomes subject to a new state court judgment, he can bring a new habeas case without facing

the second-or-successive bar.  Sheppard asserts his Proposed Petition

> attack[s] a state-court judgment that is necessarily different than
> [sic] the judgment at issue in Sheppard's initial habeas petition.
> Sheppard's sentencing judgment was entered on May 30, 1995. . . .
> At that time, a death sentence under Ohio law was automatically a
> sentence of death by electrocution; death by lethal injection was
> only applicable to Sheppard if he affirmatively chose lethal
> injection as his manner of execution one week before his scheduled
> date of execution.

*Id.* at PageID 1194.  This, he asserts, amounts at best to a constructive amendment of the

judgment by the General Assembly. *Id.* at 1195.

# ANALYSIS

Motions to amend habeas petitions under 28 U.S.C. § 2254 are evaluated by the same

standards applied to civil complaints.  28 U.S.C. § 2242.  The general standard for considering a

motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court

in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff
> may be a proper subject of relief, he ought to be afforded an
> opportunity to test his claim on the merits.  In the absence of any
> apparent or declared reason -- such as undue delay, bad faith or
> dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice
> to the opposing party by virtue of any allowance of the
> amendment, futility of amendment, etc. -- the leave sought should,
> as the rules require, be "freely given."

371 U.S. at 182.  In considering whether to grant motions to amend under Rule 15, a court

should consider whether the amendment would be futile, i.e., if it could withstand a motion to

dismiss under Rule 12(b)(6).  *Hoover v. Langston Equip. Assocs.,* 958 F.2d 742, 745 (6th Cir.

1992); *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986);  *Marx v.

Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*,

880 F.2d 887 (6th Cir. 1989).  *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th

Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir.

1980).  Likewise, a motion to amend may be denied if it is brought after undue delay or with

dilatory motive.  *Foman v. Davis*, 371 U.S. 178 (1962)*;  Prather v. Dayton Power & Light Co.*,

918 F.2d 1255, 1259 (6th Cir. 1990). In *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994), the court

repeated and explicated the *Foman* factors, noting that "Delay by itself is not a sufficient reason

to deny a motion to amend.  Notice and substantial prejudice to the opposing party are critical

factors in determining whether an amendment should be granted."  *Id.* at 130, quoting *Head v.

Jellico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir. 1989).

In the September 16 Order denying the prior motion to amend, the Magistrate Judge

relied on his decision denying a similar motion by the same counsel in *Raglin v. Mitchell*, 2015

U.S. Dist. LEXIS 125768 (S.D. Ohio, Sept. 15, 2015).  In *Raglin*, the Magistrate Judge noted

that in *Glossip* the Supreme Court interpreted *Hill v. McDonough*, 547 U.S. 573 (2006), as

follows:

> In *Hill*, the issue was whether a challenge to a method of execution
> must be brought by means of an application for a writ of habeas
> corpus or a civil action under §1983. *Id.*, at 576, 126 S. Ct. 2096,
> 165 L. Ed. 2d 44. We held that a method-of-execution claim must
> be brought under §1983 because such a claim does not attack the

- 15 -

validity of the prisoner's conviction or death sentence. *Id.*, at 579-
580, 126 S. Ct. 2096, 165 L. Ed. 2d 44.

*Glossip*, 135 S. Ct. at 2738.   In the analysis in *Raglin* incorporated in the prior denial of

amendment, the Magistrate Judge noted this Court's prior reliance on *Adams v. Bradshaw*, 644

F.3d 481 (6th Cir. 2011), to exercise jurisdiction over method-of-execution claims in habeas

corpus:

> In *Adams v. Bradshaw*, 644 F.3d 481 (6th Cir. 2011), the circuit
> court was faced with Ohio's claim, relying on *Hill*, that the district
> court lacked jurisdiction in habeas corpus over a lethal injection
> claim. The court held:
>
>> The Warden's contention that *Hill* "holds that a challenge
>> to the particular means by which a lethal injection is to be
>> carried out is non-cognizable in habeas" is too broad.
>> Nowhere in *Hill* or *Nelson* does the Supreme Court state
>> that a method-of-execution challenge is not cognizable in
>> habeas or that a federal court "lacks jurisdiction" to
>> adjudicate such a claim in a habeas action. Whereas it is
>> true that certain claims that can be raised in a federal
>> habeas petition cannot be raised in a § 1983 action, see
>> *Preiser*, 411 U.S. at 500, it does not necessarily follow
>> that any claim that can be raised in a § 1983 action cannot
>> be raised in a habeas petition, see *Terrell v. United States*,
>> 564 F.3d 442, 446 n.8 (6th Cir. 2009). Moreover, *Hill* can
>> be distinguished from this case on the basis that Adams
>> has not conceded the existence of an acceptable
>> alternative procedure. See 547 U.S. at 580. Thus, Adams's
>> lethal-injection claim, if successful, could render his death
>> sentence effectively invalid. Further, *Nelson's* statement
>> that "method-of-execution challenges[] fall at the margins
>> of habeas," 541 U.S. at 646, strongly suggests that claims
>> such as Adams's can be brought in habeas.

*Id.* at 483 (parallel citations omitted). Relying on that language from *Adams*, this Court has consistently held it has jurisdiction in habeas over method-of-execution claims. *Gapen v. Bobby*, 2012 U.S. Dist. LEXIS 121036, *3-8 (S.D. Ohio 2012); *Waddy v. Coyle*, 2012 U.S. Dist. LEXIS 94103, *7 (S.D. Ohio 2012); *Sheppard v. Robinson*, 2012 U.S. Dist. LEXIS 121829, *1 (S.D. Ohio 2012); *Bethel v. Bobby*, 2012 U.S. Dist. LEXIS 154041, *1-2 (S.D. Ohio 2012); *Sheppard v. Warden*, 2013 U.S. Dist. LEXIS 5560, *21-22 (S.D. Ohio 2013); *Turner v. Bobby*, 2013 U.S. Dist. LEXIS 39470, *3-4 (S.D. Ohio 2013).

*Raglin, supra* at *11-12. The Magistrate Judge concluded "This Court's former application of *Adams* to allow death row inmates such as Raglin to proceed simultaneously in § 1983 and habeas cannot stand in light of *Glossip*." *Id.* at *13.


## Sheppard's Proposed New Habeas Claims Are Solely Method-of-Execution Claims Cognizable Only Under § 1983

All four of Sheppard's proposed new claims are directed to Ohio's method of execution by lethal injection, to wit, by claiming that method violates the Eighth Amendment (First Ground for Relief), the Fourteenth Amendment Due Process, Privileges or Immunities, and Equal Protection Clauses (Second and Third Grounds for Relief), or federal statutes asserted to preempt Ohio law (Fourth Ground for Relief).

Sheppard does not deny that these are method-of-execution claims. Instead, he says, the Supreme Court in *Glossip* does not really mean that all method-of-execution claims must be brought in a § 1983 action. These claims, he says are different because (1) he does not propose to plead in this case a constitutional alternative method of execution, (2) he seeks an unconditional writ of habeas corpus here as opposed to a permanent injunction in the § 1983

case, and (3) relief here would preclude his execution altogether whereas relief in the § 1983 case would only preclude execution by the method enjoined. (Motion, ECF No. 70, PageID 1039, 1040-43).

Nowhere in the sixty-five pages they have written on this Motion do Sheppard's counsel actually compare the substance of the claims he has made in the Protocol Litigation and those he wishes to make here. Instead, the comparison is all in terms of remedy. Sheppard's proposed new habeas claims are set forth above. In the Protocol Litigation, Sheppard pleads the following claims:

> **Twentieth Cause of Action:** Eighth Amendment Violation Based On Substantial Risk Of Serious Harm In The Form Of Severe, Needless Physical Pain And Suffering Due To The Identity Of The Drugs In The Execution Protocol.
>
> **Twenty-First Cause of Action:** Eighth Amendment Violation Based On Substantial Risk Of Serious Harm In The Form Of Severe, Needless Physical Pain And Suffering Due To The Source Of The Drugs In The Execution Protocol.
>
> **Twenty-Second Cause of Action:** Eighth Amendment Violation Based On Substantial Risk Of Serious Harm In The Form Of Severe Mental Or Psychological Pain, Suffering And Torturous Agony Due To The Identity Of The Drugs In The Execution Protocol.
>
> **Twenty-Third Cause of Action:** Eighth Amendment Violation Based On Substantial Risk Of Serious Harm In The Form Of Severe Mental Or Psychological Pain, Suffering And Torturous Agony Due To The Source Of The Drugs In The Execution Protocol.

**Twenty-Fourth Cause of Action:** Eighth Amendment Violation Based On Substantial Risk Of Serious Harm In The Form Of A Lingering Death.

**Twenty-Fifth Cause of Action:** Eighth Amendment Violation Based On Substantial Risk Of Serious Harm In The Form Of Being The Subject Of An Undignified, Spectacle Execution Or Attempted Execution.

**Twenty-Sixth Cause of Action:** Eighth Amendment Violation Based on Substantial Risk of Serious Harm in the Form of Being Subjected to an Unwanted, Non-Consensual Human Experimentation of an Execution.

**Twenty-Seventh Cause of Action:** Eighth Amendment Violation Based on Substantial Risk of Serious Harm in the Form of Maladministration or Arbitrary Administration of the Execution Protocol.

**Twenty-Eighth Cause of Action:** Eighth Amendment Violation Based On Substantial Risk Of Serious Harm In The Form Of Being Subjected To An Execution Protocol That Is Facially Unconstitutional Because It Does Not Preclude The Execution Of An Inmate That [sic] Is Categorically Exempt From Execution.

**Twenty-Ninth Cause of Action:** Eighth Amendment Violation Based on Deliberate Indifference or Reckless Disregard of Substantial Risk of Harm to Plaintiff.

**Thirtieth Cause of Action:** Fourteenth Amendment Due Process Violation For Failure To Comply With Federal Investigational New Drug Application Regulations With Respect To The Method And Choice Of Drug To Be Used In Plaintiff's Execution.

**Thirty-First Cause of Action**: Equal Protection Violations Related To Defendants' Failures To Comply With The IND Application Laws.

**Thirty-Second Cause of Action:** First Amendment Free Exercise Clause and RLUIPA Violation.

**Thirty-Third Cause of Action:** Eighth Amendment Violations Based On Substantial Risk Of Serious Harm In The Form Of Severe, Needless Physical Or Mental/Psychological Pain And Suffering Due To Plaintiff's Unique, Individual Characteristics And Application Of The Execution Protocol.

**Thirty-Fourth Cause of Action:** Equal Protection Violations Related To Plaintiff's Unique, Individual Characteristics And Application Of The Law, Including DRC Defendants' Execution Protocol and Ohio's Execution Statute.

(Case No. 2:11-cv-1016, ECF No. 603, PageID 10854-55.)

The Twentieth through Twenty-Ninth and Thirty-Third Causes of Action are all pled under the Eighth Amendment. The Thirtieth Cause of Action pleads a due process violation of Sheppard's right to have the State of Ohio comply with federal drug regulation statutes and the Thirty-First an equal protection claim based on the same failure. The Thirty-Second Cause of Action purports to plead a claim under the Free Exercise Clause and RLUIPA. Lastly, the Thirty-Fourth Cause of Action purports to plead an equal protection claim related to Sheppard's "unique, individual characteristics." Sheppard's counsel have not attempted to show which of these claims have some overlap with his habeas grounds and which do not, although he has made no habeas claim that his conviction is unconstitutional under the Free Exercise Clause. Except for the Twenty-Eighth Cause of Action, his Eighth Amendment § 1983 claims appear to overlap completely with his Eighth Amendment habeas claims, except they are disaggregated.

Sheppard's argument about how differences in forms of relief permit both cases to proceed simultaneously is not persuasive. If he can prove in the Protocol Litigation that every

- 20 -

possible method of lethal injection execution is unconstitutional (i.e., what he believes he can prove in this habeas case), then the Court will grant him permanent injunctive relief against whichever protocol happens to be in place at the time his execution is scheduled and would renew the injunction for each new method which was thereafter shown to be unconstitutional. Conversely, if he can obtain an unconditional writ of habeas corpus, that is of course a better result for him, but it is very difficult for the Court to understand how post-judgment legal and factual developments can make his conviction and sentence retroactively invalid.

It is of course true that there are post-judgment legal developments which have made other death sentences invalid, e.g., execution of the intellectually disabled (*Atkins v. Virginia*, 536 U.S. 304 (2002)) or of those who committed murder before the age of eighteen (*Roper v. Simmons*, 543 U.S. 551 (2005)).  There are also post-judgment factual developments which preclude execution because of categorical prohibitions on executing certain categories of persons, *e.g., Panetti* and *Martinez-Villareal, supra.*  Finally, post-judgment discovery of facts that existed pre-judgment can also invalidate a conviction, e.g., when *Brady* material is discovered at any time post-trial.

These kinds of facts are different from the kinds of facts on which Sheppard relies.  The fact that drugs previously available and found constitutional by the Supreme Court are no longer available or not presently available does not make a conviction in contemplation of the availability of the previously-used drugs retroactively unconstitutional.  It may make the use of substitute drugs unconstitutional, but that is a violation wholly curable by a § 1983 action attacking that method of execution.

A court sitting in habeas corpus is to evaluate whether a petitioner's custody or death sentence is infected with unconstitutionality.  In conducting that evaluation, the court is usually limited to the state court record.  *Cullen v. Pinholster,* 563 U.S. 170 (2011).  *Pinholster* interpreted the language of 28 U.S.C. § 2254(d)(1) as "backward-looking."  *Id.*  at 182.  Sheppard in contrast appears to intend to create a new record in this Court to ground his constitutional claims, a move precluded by *Pinholster* but perfectly within the ambit of § 1983 litigation.

It is true that this Court has previously allowed claims to proceed simultaneously in § 1983 and habeas based on an expansive reading of *Adams, supra.*  But Judge Frost of this Court, the District Judge to whom this case is assigned, had held "*Glossip* now undeniably upends that practice."  *Henderson v. Warden,* 2015 U.S. Dist. LEXIS 134120 (S.D. Ohio Sept. 30, 2015)[5].  *Henderson* is correct in reading *Glossip* as unequivocally requiring method-of-execution claims to be brought in a § 1983 action.  *Stare decisis* argues for the same result here.  Because all Sheppard's proposed new claims are method-of-execution claims, they are not cognizable in habeas corpus.

Sheppard's argument that he must proceed simultaneously in § 1983 and habeas based on the statute of limitations holding in *Cooey v. Strickland,* 479 F.3d 412 (6th Cir.  2007), is also unpersuasive.  If, as *Glossip* holds, method-of-execution claims must be brought in a § 1983 action, they are not cognizable in habeas, regardless of when the statute of limitations runs.

---

[5] Despite its evident relevance, *Henderson* is not cited in Sheppard's papers.  Counsel are reminded of their obligation to disclose such authority imposed by Ohio Rule of Professional Conduct 3.3(a)(2).

Because the Proposed Second Amended and Supplemental Petition raises only method-of-execution claims not cognizable in habeas corpus, the amendment would be futile and the Motion to Amend is DENIED.

The Court does not consider whether the Motion might also be deniable as evincing a dilatory motive.

The Court also does not consider, because the parties have not briefed the question and it is not necessary to decide at this time, whether Sheppard's proposed new claims state a claim upon which relief could be granted with sufficient specificity to satisfy the habeas pleading standards or whether the alleged constitutional violations can be demonstrated from clearly established Supreme Court precedent.


**This is a Second-or-Successive Habeas Petition That Must be Transferred to the Sixth Circuit**

Having denied the requested amendment, this Court is faced again with the question whether original Petition is a second-or-successive application for habeas corpus relief. The Magistrate Judge previously concluded the habeas claims initially pled in this case were not second-or-successive because Sheppard had newly-arising habeas claims when Ohio adopted a new lethal injection protocol in September 2011. That conclusion was, of course, based on the now-rejected overbroad reading of *Adams v. Bradshaw*. Because *Glossip* "upends" that reading, it also undermines the prior conclusion on the second-or-successive question.

On its face, the Petition is second-or-successive. It is second-in-time, as noted in the Procedural History above, and it purports to make claims for relief sounding in habeas corpus.

Under those circumstances, this Court is obliged to transfer the case to the Sixth Circuit under 28 U.S.C. § 2244(b).

Sheppard's law-of-the-case argument to the contrary is not persuasive. Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation. *United States v. Moored*, 38 F 3d 1419, 1421 (6th Cir. 1994), citing *United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993).

> While the "law of the case" doctrine is not an inexorable command, a decision of a legal issue establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.

*White v. Murtha*, 377 F.2d 428 (5th Cir. 1967), quoted approvingly in *Association of Frigidaire Model Makers v. General Motors Corp.*, 51 F.3d 271, (6th Cir. 1995). But, "[a]t the trial level, the doctrine of the law of the case is little more than a management practice to permit logical progression toward judgment. Prejudgment orders remain interlocutory and can be reconsidered at any time." J. Moore, Federal Practice 2d, ¶0.404 (1993 ). The purpose of the doctrine is twofold: (1) to prevent the continued litigation of settled issues; and (2) to assure compliance by inferior courts with the decisions of superior courts. *United States v. Todd*, 920 F.2d 399 (6*th* Cir. 1990), citing Moore's, *supra*. Here the law of the case relied on an expansive reading of *Adams* which is no longer tenable in light of higher controlling authority, *Glossip*. No substantive unfairness is worked on Sheppard who can, as outlined above, obtain both substantive review and adequate relief on his claims in the Protocol Litigation. Moreover, this

- 24 -

Court has no subject matter jurisdiction over a second-or-successive habeas application. *Burton v. Stewart*, 549 U.S. 147 (2007). Subject matter jurisdiction cannot be created by a mistake of law embedded in the law of the case.

The ruling above denying amendment implies that the original Petition in this case does not state a claim upon which habeas relief can be granted because method-of-execution claims must be brought in a § 1983 action. But we have been recently reminded by the Sixth Circuit that our duty is to transfer the case to that court for any such decision. *Moreland v. Robinson*, ___ F.3d ___, 2016 U.S. App. LEXIS 2339 (6th Cir. 2016), citing *In re Sims*, 111 F.3d 45 (6th Cir. 1997).

The question of transfer under 28 U.S.C. § 2244(b) is a non-dispositive pretrial matter which is within the initial decisional authority of a Magistrate Judge to whom the case has been referred.[6] It is accordingly ORDERED that this case be transferred to the Sixth Circuit for a determination of whether it can proceed. The effective date of this transfer is STAYED until review of this Order by Judge Frost.

February 16, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

---

[6] Although the Capital Habeas Unit of the Federal Defender's Office for Southern Ohio is known to contest this position, they have conceded in another case that there is no Sixth Circuit authority directly in point. The Sixth Circuit has regularly accepted transfers under § 2244(b) from this Magistrate Judge without questioning the authority.